IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **MORRIS T. SLAUGHTER,** Plaintiff, v. **CITY OF DOUGLASVILLE, GEORGIA, CHRIS WOMACK,** in his Individual Capacity, **RUSSELL STACY FULLER,** in his Individual Capacity, **JOSHUA WOLF,** in his Individual Capacity, Defendants. | Civil Action Number: _____ **JURY TRIAL DEMANDED** |

**COMPLAINT FOR DAMAGES**

COMES NOW Plaintiff, Morris T. Slaughter, and files this Complaint against Defendants and in support thereof shows the following:

**NATURE OF CAUSE OF ACTION**

This complaint is a 42 U.S.C. §1983 action brought under the Fourth Amendment to the United States Constitution arising from the use of excessive force against Plaintiff by the Defendants, who threw Plaintiff Slaughter to the ground, kicked him in the face, pointed a firearm to his head, repeatedly beat him with an "ASP" baton as Plaintiff Slaughter lay on the ground. Plaintiff Slaughter contends that Defendants are not only liable for their own participation in the use

of excessive force but also for their failure to intervene to protect Plaintiff from the use of excessive force by fellow officers in their presence. Acting under color of law, Defendants violated Plaintiff Slaughter's rights under the Constitution and the laws of the United States and the laws and Constitution of the State of Georgia.

Plaintiff further alleges that the City of Douglasville, Georgia is vicariously liable for Defendant Chris Womack's and Defendant Russell Stacy Fuller's wrongful acts as Douglasville has waived its sovereign immunity through the purchase of liability insurance.

## JURISDICTION

1. This Court has jurisdiction over this action, which arises under the laws and Constitution of the State of Georgia, and under the Constitution of the United States made actionable through 42 U.S.C. §§ 1983 and 1988 as well as the Fourteenth Amendment to the United States Constitution. Jurisdiction is founded upon 28 U.S.C. §§1331 and 1343, and the aforementioned constitutional and statutory provisions.

## VENUE

2. Venue is proper in this Court in accordance with 28 U.S.C. §1391(b) and N.D.L.R. 3.1B(3) because the actions giving rise to this lawsuit occurred in Fulton County, Georgia, which lies in the Northern District of Georgia and because Plaintiff and one or more of the Defendants reside within said District.

3. In accordance with O.C.G.A. §36-33-5, Plaintiff presented notice of this claim to the City of Douglasville, Georgia on July 20, 2015, which is within six (6) months after the incident accrued as evidenced by **Exhibit A** (Attached).

4. In accordance with O.C.G.A. §36-11-1, Plaintiff presented notice of this claim against Deputy Joshua Wolf to Douglas County, Georgia on October 19, 2015, which is within twelve (12) months after the incident accrued as evidenced by **Exhibit B** (Attached).

5. All of the parties herein are subject to the jurisdiction of this Court.

## PARTIES

6. Plaintiff MORRIS T. SLAUGHTER (hereinafter referred to as "Plaintiff" or "Mr. Slaughter") is a citizen of the United States and was a resident of Fulton County, Georgia, at the time of the occurrence complained of herein and for purposes of the instant action, subjects himself to the jurisdiction and venue of this Court.

7. Defendant CITY OF DOUGLASVILLE, GEORGIA (hereinafter "Douglasville"), is a municipality subject to suit, existing and operating under the Constitution and laws of the State of Georgia. At all times pertinent hereto, Douglasville had established and maintained its own Police Department (City of Douglasville Police Department) (hereinafter referred to as "Police Department") making the Police Department an agency of Douglasville, which makes the police

officers employed by the Police Department to be city employees subject to the policies and procedures and control of Douglasville government.

8. Defendant CHRIS WOMACK (hereinafter "Chief Womack") is an individual who was, at all times relevant herein, the Chief of the City of Douglasville Police Department employed by the Police Department who acted within the scope of his employment and pursuant to the policies and procedures of the City of Douglasville Police Department and the City.

9. Defendant RUSSELL FULLER (hereinafter "Officer Fuller") is an individual who was, at all times relevant herein, a police officer employed by the City of Douglasville Police Department who acted within the scope of his employment and pursuant to the policies and procedures of the City of Douglasville Police Department and the City.

10. Defendant JOSHUA WOLF (hereinafter "Deputy Wolf") is an individual who was, at all times relevant herein, a deputy sheriff employed by the Douglas County Sheriff's Office who acted within the scope of his employment and pursuant to the policies and procedures of the Douglas County Sheriff's Office.

11. At all times relevant herein, Defendants acted under color of state law and on behalf of the City of Douglasville and/or the Douglas County Sheriff's Office.

## FACTS

12. On March 2, 2015, Chief Womack and Officer Fuller of the Douglasville City Police Department and Deputy Joshua Wolf of the Douglas County Sheriff's Department were involved in a high speed chase of a suspect.

13. The officers were involved in the chase that began at Arbor Place Mall, located at 6700 Douglas Boulevard, Douglasville, GA 30135 and traveled east on Interstate 20 ("I-20").

14. During the chase the officer's speed exceeded 140 miles per hour through Douglas, Cobb, and Fulton counties.

15. The subject was suspected of misdemeanor possession of marijuana.

16. The incident was also reported via dispatch as an assault on an officer at Arbor Place mall and the subject was driving a silver Hyundai.

17. The Douglas County Sheriff's Department supervisor for the day of the chase was Lieutenant Barnhill.

18. Lieutenant Barnhill communicated to all Douglas County deputies involved in the chase, including Deputy Wolf, to discontinue the chase.

19. Deputy Wolf disobeyed his superior officer's direct order to discontinue the chase and he continued chasing the suspect's vehicle along with Chief Womack and Officer Fuller of Douglasville Police Department.

20. Chief Womack violated the City of Douglasville's chase policy by pursuing the suspect outside the city limits for a non-violent, misdemeanor violation.

21. The chase covered a distance of 12 miles.

22. Approximately five (5) law enforcement vehicles were involved in the pursuit when the suspect's vehicle crashed on I-20 in Fulton County shortly after passing Fulton Industrial Boulevard.

23. The airbags in the suspect's vehicle deployed.

24. Chief Womack was the first officer to interact with the suspect after his vehicle crashed.

25. Chief Womack approached the suspect's vehicle with his service-issued Glock 40-caliber handgun drawn, which he placed to the back of the suspect's head.

26. Chief Womack did not check the suspect for injuries, but grabbed the suspect with his gun placed to the back of the suspect's head and snatched the suspect out of his crashed vehicle with the deployed airbags.

27. The suspect was unarmed and made no effort to struggle or fight Chief Womack.

28. Chief Womack then threw the suspect to the ground and sat on top of the suspect's torso and shoulders with his gun pointed to the back of his neck as the suspect laid face down on the asphalt.

29. The suspect was face down on the highway with Chief Womack on top of him when other officers arrived.

30. Witnesses observed Officer Fuller kicking the suspect in the head as he is laid face down on the highway.

31. Deputy Wolf immediately began punching the suspect in his face with a closed fist as Chief Womack presses his gun into the suspect's head.

32. Officer Fuller extended his ASP baton and began to repeatedly strike the suspect's lower extremities while the suspect was being punched in the face and a Glock 40 caliber handgun was being jammed into his head.

33. Officer Fuller made no attempt to place the suspect in hand cuffs, but instead, he elected to beat him with the ASP baton.

34. The suspect, Morris Slaughter, was 5'9 tall and 150 pounds and was not resisting his arrest as he was assaulted by the three (3) law enforcement officers.

35. During the assault, Mr. Slaughter cried out in pain, "I'm hurting!"

36. Officer Adam Haney arrived on the scene and observed the actions of his fellow officers.

37. Officer Haney he does not join in because, Mr. Slaughter was subdued and no further efforts were needed.

38. The officers' assault of Mr. Slaughter was observed on the Department of Transportation's live feed.

39. Several witnesses monitoring the Department of Transportation's live feed observed the officers' assault of Mr. Slaughter.

40. During the assault, one of the witnesses instructed the camera operator to "pull the camera back, before the media sees this."

41. Sergeant Jeff Puckett of the Georgia State Patrol was one of the witnesses monitoring the Department of Transportation live feed.

42. Sergeant Puckett provided at statement to investigators that stated he did not believe the force being used was reasonable.

43. As Sergeant Puckett watched the arrest he said "Don't do it" in reference to the officers engaging in any further violence against Mr. Slaughter.

44. While face down on the ground, Mr. Slaughter suffered injuries to his head, left side of his face, right arm and wrist, neck, back, and left leg as a direct result of Defendants' actions.

45. Defendants' conduct reflected malice towards Mr. Slaughter with an actual intent to harm him.

## **THEORIES OF RECOVERY**

### I.     Fourth Amendment Claim Under Section 1983

46.    The aforementioned misconduct of Defendants in using excessive force against Plaintiff constituted an unreasonable seizure of his person in violation of the Fourth Amendment of the United States Constitution.

47.    The law was clearly established in March 2015 that law enforcement officers may not use gratuitous, unnecessary and punitive force during the arrest of a suspect who has been subdued and no longer poses a significant threat, and in any event the force used must be reasonable in proportion to the threat posed by the citizen.

48.    Chief Womack and Officer Fuller intentionally beat Mr. Slaughter after he had been subdued.

49.    At the time of the beating there was absolutely no need for the application of any force against Mr. Slaughter, much less the level of force exhibited by Chief Womack and Officer Fuller.

50.    Chief Womack's and Officer Fuller's beatings of Mr. Slaughter constituted an excessive use of force and a malicious and sadistic abuse of their power as officers acting under color of law.

51.    The force utilized by Chief Womack and Officer Fuller constituted a violation of Mr. Slaughter's rights under the Fourteenth Amendment of the United

States Constitution to be free from the use of excessive force and to be free from the use of force without due process of law.

52. The law was also clearly established in March 2014 that police officers have a duty to intercede when their fellow officers use excessive force against a suspect in their presence.

53. Accordingly, Defendants are not entitled to qualified immunity because they violated one or more principles of clearly established law under the Fourth Amendment.

54. Accordingly, Defendants are liable under 42 U.S.C. §1983 for violating Plaintiff's Fourth Amendment rights by causing, participating in, or failing to stop the use of excessive force against Plaintiff.

## II. VIOLATION of O.C.G.A. §§ 51-1-13 and 51-1-14

55. This count is alleged against Chief Womack and Officer Fuller.

56. As described in this Complaint, both Chief Womack and Officer Fuller used needless and gratuitous force when placing Plaintiff under arrest.

57. Both Chief Womack and Officer Fuller knew that, at the time they repeatedly struck Plaintiff, that he posed no threat to the public or to the officers on the scene.

58. Both Chief Womack and Officer Fuller knew that their actions were not legal and acted with deliberate intent to do wrong.

59. Chief Womack and Officer Fuller are not entitled to official immunity under Georgia law.

### III. VIOLATION OF O.C.G.A. §§51-1-13 and 51-1-14

60. This count is alleged against the City of Douglasville, Georgia (hereinafter referred to as the "City") on the basis of respondeat superior liability.

61. Plaintiff provided the City ante litem notice which was delivered on July 30, 2015 and met all prerequisites to filing suit against the City.

62. The City has purchased liability insurance that provided coverage and indemnification for liability arising from the operations of the City's police department and the conduct of law enforcement officers employed by the City. That policy was in effect at all times relevant to this Complaint.

63. The purchase of liability insurance constitutes a limited waiver of sovereign immunity by the City.

64. During the course of his employment and while fulfilling his official duties, Chief Womack and Officer Fuller violated O.C.G.A. §§51-1-13 and 51-1-14 by causing physical injury to Plaintiff.

65. The City is liable for the intentional and negligent actions of Officer Nesbit under the doctrine of respondeat superior for violations of State law.

66. The City is not entitled to present a defense of official immunity.

## IV.   DAMAGES

67.   As a direct and proximate result of the above described conduct of Defendants, Plaintiff Morris T. Slaughter has been deprived of his constitutional rights and subjected to extreme physical and mental pain and suffering, and Plaintiff has been forced to incur substantial medical expenses.

68.   Defendants are liable to Plaintiff for all of the foregoing injuries and damages in an amount to be proven at trial and determined by the enlightened conscience of fair and impartial jurors.

69.   The aforementioned conduct of Defendants Womack and Fuller amounted to such conscious indifference and reckless disregard for the consequences as to also authorize the imposition of punitive damages against said Defendants.

70.   Plaintiffs are also entitled to recover reasonable attorney's fees and expenses of litigation pursuant to 28 U.S.C. §1988.

## V.   ATTORNEY'S FEES UNDER O.C.G.A. §13-6-11

71.   This count is alleged against all Defendants under O.C.G.A. §13-6-11.

72.   Plaintiffs are entitled to recover expenses personally of litigation under O.C.G.A. § 13-6-11 because Defendants have acted in bad faith, been stubbornly litigious, and/or caused Plaintiffs unnecessary trouble and expense.

73.   O.C.G.A. § 13-6-11 applies to tort actions arising under state law.

**WHEREFORE**, Plaintiff requests the following:

A. That judgment be entered in favor of Plaintiff and against Defendants in an amount to be determined by the enlightened conscience of fair and impartial jurors to the extent allowed by law;

B. This action be tried by a jury;

C. Plaintiff be awarded punitive damages as established by the evidence;

D. That Plaintiffs be awarded attorney's fees and reasonable expenses of litigation;

E. That all costs of this action be taxed against Defendants; and

F. That the Court award any additional or alternative relief as may be deemed appropriate under the circumstances.

Respectfully submitted this _____ day of February, 2017.

| | |
|---|---|
| s/Jeffrey R. Filipovits | */s/ Mawuli M. Davis* |
| JEFFREY R. FILIPOVITS | MAWULI M. DAVIS |
| Georgia Bar No. 825553 | Georgia Bar No. 212029 |
| | FRANK GAITHER, JR. |
| | Georgia Bar No. 282288 |
| | |
| **FILIPOVITS LAW FIRM, P.C.** | **THE DAVIS BOZEMAN LAW FIRM, P.C.** |
| 2900 Chamblee-Tucker Road | 4153-C Flat Shoals Parkway |
| Building 1 | Suite 332 |
| Atlanta, Georgia 30341 | Decatur, Georgia 30034 |
| Phone: 770-455-1350 | (404) 244-2004 |
| Fax: 770-455-1449 | (404) 244-2020 (FAX) |
| jeff@law.filipovits.com | mdavis@davisbozemanlaw.com |
| | fgaither@davisbozeman.law.com |